IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| Dr. Elizabeth Price § | |
|    Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | |
| Ranger College § | |
|    Defendant § | |

## Plaintiff's Original Complaint

Plaintiff Dr. Elizabeth Price ("Dr. Price" or "Plaintiff") files this Original Petition against Ranger College ("Ranger" or "Defendant") and shows:

## Statement of Jurisdiction

1. This Court has federal question jurisdiction of the sex discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e-2 and 2002e-3. The Court has supplemental jurisdiction of Plaintiff's sex discrimination and retaliation claims under Texas Labor Code Chapter 21.

2. Venue is proper in the Northern District of Texas, Abilene Division, under 42 U.S.C. 2000e-5(f)(3) because the unlawful employment practices were committed in Eastland County, Texas.

## Parties

3. Plaintiff Dr. Elizabeth Price is an individual and a citizen of Texas and a resident of Eastland County, Texas.

4. Defendant Ranger College is a community college in Texas doing business in Eastland County, Texas. It may be served by serving its registered agent, President William Campion, 1100 College Circle, Ranger, Texas 76470.

## Summary of Claims

5. This lawsuit arises from Ranger College's failure to comply with the laws requiring it to protect Dr. Elizabeth Price from unlawful sex discrimination, sexual harassment and a hostile working environment and the laws prohibiting retaliation against an employee who engaged in activity protected by law.

## Factual Background

6. Dr. Price is a female employed by Ranger College as a tenured professor and as the Director of Testing. Dr. Price also serves as the Title IX Coordinator for Ranger College. She has worked for Ranger College for over 20 years.

7. In 2016, Dr. Price was subjected to an egregious and unwelcome sexually hostile work environment. Dr. Price engaged in protected activity and reported the sexually hostile work environment and was retaliated against for doing so.

8. On April 18, 2016, Rodney Heard, then Assistant Basketball Coach, made offensive comments to Dr. Price of a sexual nature. This started at about 7:30 a.m. in the Ranger College cafeteria as Dr. Price ate breakfast. Coach Heard and another Assistant Basketball Coach, Brandon Espinosa, came in. Coach Heard walked up and told Dr. Price she smelled good. When Dr. Price thanked him, Coach Heard said, "I can smell it. Can you smell it? I smell man." Dr. Price tried to ignore him, but he continued to say it. Coach Heard inferred that that Dr. Price smelled like she had had sex.

9. Later that morning, Coaches Heard and Espinosa came into the testing room and disrupted the testers. Dr. Price told them to leave and had to escort them out. Coach Heard said "can you smell it?" all over again in front of Coach Espinosa.

10. On April 19, 2016, Dr. Price was again having breakfast at the cafeteria and Coach Heard made these remarks to her again. This time he was louder and he looked at the two assistant baseball coaches, Jeff Fisher-Gasper and Wes Hunt, and asked them if they could smell it and whether they could "smell the man" on Dr. Price. They tried to ignore him, but he insisted they listen. Dr. Price told Coach Heard to shut up and go away, but he would not leave. Dr. Price left to test. In about 30 minutes, Coaches Heard and Espinosa came in to the testing room. Dr. Price asked them to leave and escorted them to the hall. Coach Heard again said, "Can you smell the man on her?" He then asked about Dr. Price's personal income taxes and how much she paid in taxes. After she told him nothing, he wanted to know how and Dr. Price told him about her tax person. Coach Heard asked for Dr. Price's tax person's phone number. Dr. Price went back into the testing room to get the number. When she returned with the phone number, Coach Heard leaned over and kissed Dr. Price on her forehead and said, "I bet that's the first time a black man has kissed you." Coach Heard and Coach Espinosa then left.

11. On April 20, 2016, Coach Heard again made these offensive statements at the breakfast table. This time, Coach Heard got Coach Foy involved and kept asking Coach Foy if he could smell the man on Dr. Price. Coach Foy tried to avoid the conversation and mumbled something. Dr. Price left after trying to get Coach Heard to shut up.

12. Coach Heard and Coach Espinosa later showed up in the business building, but Dr. Price met them outside the testing room. Coach Heard said, "I know how you white people are, you like to have sex in the morning before breakfast." Dr. Price told

him to shut up and leave and then walked away.

13. On April 21, 2016, Coach Heard appeared at breakfast and continued with his "can you smell it?" comments. Dr. Price told him that if he did not shut up, she would slap him. He said, "It wouldn't be the first time." Dr. Price left and did not see him again until the first week in May.

14. Each day this occurred, Dr. Price verbally reported these incidents to her supervisor, Dr. Billy Adams, and to Human Resources Director Delinda Spencer.

15. Coach Heard was out of town for a week, but when he returned to Ranger College on May 4, 2016, he immediately made the offensive comments to Dr. Price again. Coach Heard walked into the cafeteria on May 5, 2016, while Dr. Price was at breakfast and again said to Dr. Price and others, "Can you smell the man on her?" The assistant baseball coaches and Coach Foy heard him. Dr. Price told Coach Heard to shut up and leave her alone. She then left the cafeteria.

16. On May 5, 2016, Coach Heard did the same thing at breakfast again. Dr. Price again told him to stop and shut up. Later that morning, Dr. Price was in her small office with Sarah Orsini while assisting students with their schedules. Around 10 a.m., Coaches Heard and Espinosa walked up. Coach Espinosa yelled outside of her office that "Dr. Price is a liar!" There were several students sitting outside Dr. Price's office and he told them not to believe Dr. Price because she lies. Coach Espinosa walked into her office and sat down. Coach Heard entered her office and asked Sarah Orsini if she wanted to see a picture from his party in Atlanta. He showed Ms. Orsini a photo of naked women and said that they had attended his party. Coach Heard asked Ms. Orsini if he should show Dr. Price the photo and Ms. Orsini told him no.

17. Coach Heard then closed the door, trapping both Dr. Price and Ms. Orsini in Dr. Price's small office. They had no way to leave. Coach Heard then talked about menopause and he asked had Dr. Price gone through menopause. Dr. Price told him it was not any of his business. He then said, "I guess she has," referring to Dr. Price. He then asked Dr. Price if she sweats during sex. He said things such as "are you a sweater?" and "I bet you are a sweater" referring to sex. He also said, "Do you know women squirt?" Dr. Price tried not to make eye contact with him. Ms. Orsini tried to open the door and Coach Heard shut it. At this time, Coash Espinosa was writing "Dr. Price is a liar" on the end of her bookcase in crayon.

18. Dr. Price asked Coach Heard to leave her office since she had students sitting outside waiting on her. Coach Heard pulled the door open and told the students that Dr. Price would be with them later.

19. Coach Heard then continued with his vulgar remarks and asked, "Did you know women squirt?" Coach Espinosa finally told Coach Heard, "I don't think they want to be sexually harassed today." However, Coach Heard continued and said that his sister was a gynecologist and that she looked at pussy all day long. He asked "wouldn't it be nice to look at pussy as a job." Coach Espinosa said yes, but asked "what if it smelled like bad cheese?"

20. Dr. Price could not take any more and demanded they leave her office, which they finally did.

21. Dr. Price found the statements made by Coach Heard and Coach Espinosa on that and the earlier days to be highly offensive. These statements had the effect of unreasonably interfering with her work performance. Dr. Price was trapped in her

office while they made these sexually offensive statements and it created an intimidating, threatening, hostile and offensive work environment for Dr. Price. Dr. Price had previously been humiliated in front of her peers.

22. During the May 5th incident, Dr. Price continued to tell them to get up and get out of her office, but they would not do so. They finally left and Dr. Price immediately reported their behavior to her direct supervisor, Vice President of Instruction, Dr. Billy Adams and the Human Resource Director Delinda Spencer. Cherie Beltran, the Dean of Administration, was also told about it. Ms. Beltran called her husband, Jaime Beltran, who was the soccer coach, to come over and look out for Dr. Price.

23. When Dr. Price went into the Human Resource Director's office to discuss this with Ms. Spencer and to make an official report, Coach Heard walked in, got close to Dr. Price and said, "Hey, what are you doing?" Both Ms. Spencer and Dr. Adams were present and just watched him. This was very disconcerting to Dr. Price and she continued to feel she was being stalked by Coach Heard.

24. Dr. Price had lunch with Ms. Orsini that day and asked Ms. Orsini if she thought Dr. Price had been in danger. Ms. Orsini told Dr. Price that if Ms. Orsini had not been there with Dr. Price, she felt like Dr. Price would have been in danger.

25. After lunch, Coach Beltran walked Dr. Price back to her office. Coach Beltran then went around the corner to the Registrar's office. Coach Espinosa came into the building and paced in front of Dr. Price's office, saying that "someone needs an attitude adjustment." Coach Espinosa had a metal baseball bat slung over his shoulder and he tapped the end of the bat in his hands a couple of times while pacing in front of Dr. Price's office the entire time. As Coach Beltran came back to Dr. Price's

office, Coach Espinosa lunged forwards towards Dr. Price, pointing the bat at her, and saying "someone needs an attitude adjustment and I will do it." Dr. Price feared that he was about to hit her with the baseball bat. Coach Beltran told him to leave and go away. Fortunately, he did.

26. Dr. Price also reported this incident to Ms. Spencer and Dr. Adams. Dr. Price then went to President William Campion's office and told him briefly what had happened that day. President Campion said that he would take care of it.

27. However, when President Campion saw Ms. Orsini at a social event at the lake that evening and Ms. Orsini told him that the incident was disgusting, President Campion asked Ms. Orsini how she would feel if the upper level administration did nothing.

28. Dr. Price prepared a written Ranger College Incident Report on May 6, 2016. Coach Beltran also completed a Ranger College Incident Report.

29. Dr. Price went to the Ranger College graduation ceremony on May 6, 2016. Both Coach Heard and Coach Espinosa attended the graduation, but did not approach her.

30. Only after Dr. Price made her report to President Campion did Ranger College investigate Dr. Price's complaints. Prior to May 6th, Ranger College took no action to protect Dr. Price from this hostile work environment.

31. After reporting this sexually harassing and hostile work environment, Dr. Price was subjected to additional scrutiny and retaliation. For example, President Campion criticized Dr. Price to Dr. Adams for not wearing a cap and gown at the graduation ceremony even though Dr. Price was serving in a ticket taker and door holder role. Dr.

Adams warned Dr. Price that President Campion would start "nit-picking" her and it has begun.

32.   Dr. Price was typically notified of her contract renewal in April or May of a calendar year.  However, on May 21, 2016, President Campion distributed a list of everyone being rehired and offered new contracts for the 2016/2017 academic year. Dr. Price's name was not on that list.  Only after Dr. Price complained through counsel about this retaliation was Dr. Price's contract renewed.

33.   Dr. Price was originally denied permission to attend a conference in Denver, Colorado even though her attending the conference would have cost Ranger College nothing.  After complaining of retaliation through her counsel, Dr. Price was granted permission to attend.

34.   In July 2016, just before the 2016-2017 academic year began, Ranger College took away the office in which Dr. Price worked.  Dr. Price was moved out of her office and placed into a computer room which Ranger College uses for testing where Dr. Price would have no phone or office of any kind anymore.  Because Dr. Price is to advise students, and perform student retention, recruiting and testing, this small public space would make it difficult for Dr. Price to perform her job duties.  This adverse employment action happened after Dr. Price engaged in protected activity.

35.   Dr. Price timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on June 15, 2016.  This Charge was automatically dual-filed with the Texas Workforce Commission.   After Dr. Price's attorney requested a Right to Sue from the EEOC and the EEOC advised the Department of Justice of the request, the U.S. Department of Justice Civil Rights Divisions issued a Notice of Right to Sue

received by Dr. Price's counsel on February 27, 2017. The Texas Workforce Commission issued its own Right to Sue, which was received by Dr. Price's counsel on March 21, 2017.

36.   Dr. Price timely complied with all conditions precedent for suing.

## Causes of Action

### Sex Discrimination and Harassment under Title VII and Texas Labor Code Ch. 21

37.   Dr. Price incorporates the preceding paragraphs as if restated.

38.   Dr. Price asserts claims for sex discrimination, sexual harassment and the creation of a hostile work environment based on her sex in violation of Title VII, 42 U.S.C. § 2000e-2(a) and Texas Labor Code § 21.051.

39.   During her employment, Dr. Price, a female, has been subjected to harassment based on her gender that was unwelcome, undesirable and offensive to Dr. Price. The comments made to Dr. Price by Coach Heard and Coach Espinosa were vulgar and offensive and were harassing and occurred because of her gender. The harassing comments affected the terms, conditions and privileges of her employment. The comments made by the two Coaches were both severe and pervasive and occurred regularly over weeks.

40.   Dr. Price was also harassed because of her gender when she was threatened by Coach Espinosa with a baseball bat.  Coach Espinosa said that "someone needed an attitude adjustment," referring to Dr. Price and lunged towards her with a metal baseball bat.  Fortunately, Coach Jaime Beltran was present when this occurred and intervened and told Coach Espinosa to leave Dr. Price alone. The harassment of Dr. Price by Coach

Espinosa was severe and caused Dr. Price to fear for her physical safety. This harassment occurred because of Dr. Price's gender.

41. The harassment that Price complains of altered a term, condition or privilege of Price's employment. Dr. Price was made to feel uncomfortable in her working environment. Dr. Price was embarrassed and humiliated in front of her colleagues. Dr. Price's colleagues were repeatedly asked if they could "smell" the man or sex on her. Dr. Price could not perform her job duties because of the harassment. Dr. Price's physical safety was threatened and she felt unsafe in her workplace. A reasonable person would find that the harassment of Dr. Price created an abusive working environment.

42. Ranger College knew of the harassment. Dr. Price complained to her supervisor and the Human Resources department on each occasion that Coach Heard and Coach Espinosa made harassing and offensive comments to her. Despite Dr. Price's regular complaints to it, Ranger College failed to take prompt remedial action to eliminate the harassment. Dr. Price took advantage of the preventive and corrective opportunities available to her to have Ranger College correct and stop the harassment of her by reporting the conduct of Coach Heard and Coach Espinosa. But Ranger College took no action to timely cease the harassment of Dr. Price.

43. Dr. Price has been damaged by Ranger College's actions. The damages include mental anguish, emotional distress and other intangible harms and losses.

44. Dr. Price seeks to recover all damages she suffered because of this sex discrimination, harassment and hostile work environment, including all remedies available to her under Title VII, 42 U.S.C. § 2000e-5, Tex. Labor Code §§ 258, 21.2585, and 21.259. The relief sought includes damages, equitable relief, injunctive relief,

compensatory damages, punitive damages and the recovery of her reasonable attorney's fees and costs.

## Retaliation under Title VII and Texas Labor Code Ch. 21

45.  Dr. Price incorporates the foregoing paragraphs as if set forth herein.

46.  Dr. Price engaged in protected activity each time she reported the unlawful harassment by the two Ranger College coaches to her supervisor and the Human Resources department at Ranger College.

47.  Dr. Price suffered acts of retaliation after she engaged in protected activity. This retaliatory activity violates Title VII, 42 U.SC. § 2000e-3 and Texas Labor Code § 21.055.

48. Dr. Price was retaliated against in July 2015 when her physical safety was threatened after she complained of the conduct of Coach Heard and Coach Espinosa. After Dr. Price complained about their harassment, Coach Espinosa lunged towards her with a baseball bat while remarking that "someone needs an attitude adjustment." Dr. Price feared for her safety when that happened.

49.  Dr. Price was retaliated against when her contract renewal was delayed following her complaints of harassment. Dr. Price was retaliated against when she was originally denied permission to attend a conference in Denver, Colorado even though her attendance would have cost Ranger College nothing. Dr. Price was retaliated against when her office was taken away from her and she was to be put in a public space with no telephone and no privacy. Dr. Price has been subjected to other adverse employment actions after she complained of the sex based harassment.

50. Dr. Price would not have suffered the adverse employment actions but for her protected conduct.

51.  Dr. Price has been damaged by this retaliation, including suffering mental anguish, emotional distress, and other intangible harms and losses.

52.  Dr. Price seeks to recover all damages she suffered because of this retaliation including all remedies available to her under Title VII, 42 U.S.C. § 2000e-5 and Tex. Labor Code §§ 258, 21.2585, and 21.259, including damages, equitable relief, injunctive relief, compensatory damages, punitive damages and the recovery of her reasonable attorney's fees and costs.

## Jury Trial

53.  Dr. Price demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff Dr. Elizabeth Price prays this Court enter a judgment declaring the acts and practices of Defendant violate Title VII and Texas Labor Code Ch. 21 and award Plaintiff the relief sought and enter such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Johnston Tobey Baruch P.C.
3308 Oak Grove
Dallas, Texas 75204
214.265.9958 (direct dial)
214.740.6248 (Facsimile)
karen@jtlaw.com

Attorney for Plaintiff Dr. Elizabeth Price